**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALLEY CATS ALLIES INCORPORATED,<br><br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES NATIONAL PARK SERVICE, an agency of the U.S. Department of the Interior, CHARLES F. SAMS III, in his capacity as Director of the U.S. National Park Service, MARK FOUST, in his capacity as the Regional Director of the South Atlantic-Gulf region of the U.S. National Park Service, DEB HAALAND, in her capacity as U.S. Secretary of the Interior, and MYRNA PALFREY, in her capacity as Superintendent of the San Juan National Historic Site,<br><br>      Defendants. | Civil Case No. 1:24-cv-876-RDM |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY
PENDING APPEAL, OR IN THE ALTERNATIVE, FOR ADMINISTRATIVE STAY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

    I.       Plaintiffs Cannot Show a Likelihood of Success on the Merits, Particularly Because the Court has Already Ruled against Them. ............................................ 6

    II.      Plaintiffs Cannot Demonstrate Irreparable Harm. .................................................. 9

    III.    The Balance of Harm and Public Interest Factors Weigh Against an Injunction. ...................................................................................................................11

    IV.    Plaintiffs Are Not Entitled to an "Administrative Stay" ...................................... 14

CONCLUSION.................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Anazi v. Bush*,
370 F. Supp. 2d 188 (D.D.C. 2005)......................................................................................... 5

*\*Alcresta Therapeutics, Inc. v. Azar*,
318 F. Supp. 3d 321 (D.D.C. 2018).....................................................................1, 5, 9, 10, 11

*\*Amgen Inc. v. Azar*,
No. 17-cv-1006-RDM, 2018 WL 1990521 (D.D.C. Feb. 22, 2018) ..............................5, 7, 8, 11

*Amoco Production Co. v. Vill. of Gambell*,
480 U.S. 531 (1987) .......................................................................................................11

*Appalachian Voices v. Chu*,
725 F. Supp. 2d 101 (D.D.C. 2010)......................................................................................... 6

*ASPCA v. Ringling Bros. & Barnum & Bailey Circus*,
317 F.3d 334 (D.C. Cir. 2003)............................................................................................. 10

*Benten v. Kessler,*
505 U.S. 1084 (1992) ....................................................................................................... 6

*Cal. Ass'n of Private Postsecondary Schools v. DeVos*,
344 F.Supp.3d 158 (D.D.C. 2018)......................................................................................... 9

*Cardinal Health, Inc. v. Holder*,
846 F. Supp. 2d 203 (D.D.C. 2012)......................................................................................... 9

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006)......................................................................................... 9, 10

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
904 F.3d 1014 (D.C. Cir. 2018)......................................................................................... 6

*E.B. v. U.S. Dep't of State*,
422 F. Supp. 3d 81 (D.D.C. 2019)......................................................................................... 10

*Elec. Priv Info. Ctr. v. Dep't of Justice*,
15 F. Supp. 3d 32 (2014) .................................................................................................. 9

*Fisheries Survival Fund v. Jewell*,
236 F. Supp. 3d 332 (D.D.C. 2017).................................................................................. 9

*Heritage Found. v. U.S. Env't Prot. Agency*,
No. 23-cv-748-JEB, 2023 WL 2954418 (D.D.C. Apr. 14, 2023)......................................... 9

*McCammon v. United States*,
588 F. Supp. 2d 43 (D.D.C. 2008)......................................................................................... 6

*MediNatura, Inc. v. Food & Drug Admin.*,
 No. 20-cv-2066-RDM, 2021 WL 1025835 (D.D.C. Mar. 16, 2021) ........................................... 5

*Memphis Publ'g Co. v. FBI*,
 195 F.Supp.3d 1 (D.D.C. 2012) ................................................................................................ 5

*\*Nat'l Ass'n for Fixed Annuities v. Perez*,
 219 F. Supp. 3d 10 (D.D.C. 2016) .................................................................................... 6, 7, 8

*New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*,
 208 F. Supp. 3d 142 (D.D.C. 2016) ......................................................................................... 10

*Nken v. Holder*,
 556 U.S. 418 (2009) ............................................................................................ 1, 2, 5, 11, 14

*Ohio Citizens for Responsible Energy, Inc. v. NRC*,
 479 U.S. 1312 (1986) ............................................................................................................... 1

*Republican Nat'l Comm. v. Pelosi*,
 No. 22-cv-659-TJK, 2022 WL 1604670 (D.D.C. May 20, 2022) ......................................... 6, 9

*United States v. Philip Morris USA, Inc.*,
 449 F. Supp. 2d 988 (D.D.C.2006) ........................................................................................... 6

*Weinberger v. Romero-Barcelo*,
 456 U.S. 305 (1982) ............................................................................................................... 11

*Winter v. Nat. Res. Def. Council*,
 555 U.S. 7 (2008) ............................................................................................................ 5, 9, 11

*Wis. Gas Co. v. FERC*,
 758 F.2d 669 (D.C. Cir. 1985) .................................................................................................. 9

**Statutes**

54 U.S. C. § 100101(a) .............................................................................................................. 12

**INTRODUCTION**

On May 20, 2026, this Court issued its Memorandum Opinion ("Opinion") in which it determined that Plaintiffs' claims challenging the National Park Service's ("NPS" or "Park Service") Free-Ranging Cat Management Plan ("2023 Plan" or "Plan") lacked merit. The Opinion, which is nearly 90 pages in length, exhaustively and conclusively rejected each of Plaintiffs' claims. On June 9, Plaintiffs filed an appeal—and now, in their Motion for Stay Pending Appeal, or in the Alternative, for Administrative Stay ("Motion")—ask the Court to "stay its decision in this case—and the 2023 Plan of the [NPS] to trap, remove, and kill the cats who make their home on the Paseo del Morro . . . pending appeal." Dkt. 85-1 at 7.

But Plaintiffs are not actually asking the Court for a stay. As the Supreme Court has explained:

> A stay pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one. Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act— the order or judgment in question—not by directing an actor's conduct. A stay "simply suspend[s] judicial alteration of the status quo," while injunctive relief "grants judicial intervention that has been withheld by lower courts."

*Nken v. Holder*, 556 U.S. 418, 428–29 (2009) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (SCALIA, J., in chambers)). As their Motion makes clear, Plaintiffs are not seeking to "simply suspend[] judicial alteration of the status quo," but rather, are requesting "judicial intervention." *See id.* Thus, although they are decidedly opaque about it, Plaintiffs are asking the Court to enjoin NPS' implementation of the 2023 Plan—even though the Court just determined the Plan was lawful.

Under these circumstances, the proper standard to address Plaintiffs' Motion is that addressing an injunction pending appeal, which requires consideration of the same four factors relevant to a request for a preliminary injunction. *Alcresta Therapeutics, Inc. v. Azar*, 318 F.

Supp. 3d 321, 324 (D.D.C. 2018).  Not one of these factors weighs in favor of the extraordinary relief Plaintiffs seek.

With respect to the first factor, likelihood of success on the merits, despite Plaintiffs' extensive efforts to reinvigorate their arguments on the merits, their arguments fail to provide any convincing basis for the Court to reconsider its Opinion.  As a result, Plaintiffs are wholly unlikely to succeed on the merits.  With respect to the second factor, irreparable harm, Plaintiffs focus completely on alleged harm to others (namely the cats and to the local community), overlooking the fact that cognizable irreparable harm for an injunction must be harm to Plaintiffs themselves.  Finally, because Defendants are government officials and agencies, the final two factors, balance of harm and the public interest, merge.  *Nken*, 556 U.S. at 435.  These two factors also weigh strongly against the requested injunction.  In particular, the injunction would impose additional and substantial delay on the Park Service's efforts to address the growing population of free-ranging cats—a circumstance that the Park Service has determined must be addressed to, among other things, advance important goals and to ensure compliance with NPS authorities and guidance.

Ultimately, Plaintiffs cannot meet their weighty burden of demonstrating entitlement to the extraordinary relief they seek, and the Court should deny their Motion.

## BACKGROUND

On November 21, 2023, after undertaking a robust process under the National Environmental Policy Act ("NEPA"), the Park Service adopted the 2023 Plan for the San Juan National Historic Site ("the Park").  J.A. 1089-125.  In adopting the Plan, the Park Service sought to advance several important goals, namely "to improve the safety of its visitors and employees, protect park resources and reduce impacts to native wildlife species associated with free-ranging cats, alleviate nuisance issues, align the visitor experience with the purpose of the

2

park, and bring the park into compliance with existing authorities for invasive species." J.A. 854. On March 27, 2024, Plaintiff Alley Cat Allies ("ACA") filed its complaint challenging the Park Service's adoption of the Plan under NEPA.  Dkt. 1.

Proceeding to the merits in the case proved to be a lengthy and cumbersome proposition. On August 19, 2024, Plaintiff moved for preliminary injunctive relief.  Dkt. 22.  After a scheduling conference, the parties reached an arrangement under which the parties would brief the merits in an expedited summary judgment briefing schedule, and Plaintiff would withdraw its motion for a preliminary injunction.  Dkt. 23.  As part of this arrangement, Defendants made certain representations, including that prior to March 14, 2025 (by which time the parties anticipated a merits ruling), Defendants would not authorize removal of the cats by a removal agency or animal welfare organization; and if a decision had not issued by that date, provide advance notice of such authorization.  *Id.* ¶ 3.

Pursuant to the parties' agreed, expedited briefing schedule, Plaintiff filed its Motion for Summary Judgment on October 4, 2024.  Dkt. 25.  One month later, the Park Service filed its Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion.  Dkt. 27.  The motions were fully briefed as of January 31, 2025, and the Court set a hearing for March 7, 2025. Feb. 4, 2025 Min. Order.  However, shortly thereafter, ACA obtained new counsel, *see* Dkt. Nos. 37 & 38, and filed an unopposed motion to move the hearing date to allow new counsel to familiarize themselves with the case.  Dkt. 41.  The Court granted the motion, ultimately scheduling the hearing for April 16, 2025.  March 4, 2025 Min. Order.

After Plaintiff's counsel notified Defendants' counsel that they were unable to locate certain public comments in the administrative record, the parties conferred and ultimately, on March 27, 2025, Defendants supplemented the administrative record to include the comments

3

that were inadvertently omitted.  Dkt. 44.  ACA subsequently filed a motion to "Govern Proceedings," seeking leave to file an amended complaint, including proposing the addition of Save-A-Gato ("SAG") as a plaintiff, and for further briefing on the merits. Dkt. 47.  Over Defendants' opposition, in a June 6, 2025, Minute Entry, the Court directed ACA to "file an Amended Complaint or file a New Case." On June 13, ACA filed an Amended Complaint, asserting new claims, Dkt. 54, and on the same date, SAG, represented by the same counsel, filed a new lawsuit asserting the same claims as those in ACA's Amended Complaint. *See Save-A-Gato, Inc. v. United States Nat'l Park Serv.et al.*, No. 25-cv-1873.  On July 17, over Defendants' partial objection, the Court consolidated the two cases.  *See* Dkt. 57.

The parties jointly proposed a schedule for a renewed round of cross-motions for summary judgment, again on an expedited basis.  Dkt. 64.  As part of this proposed schedule, Defendants again represented, in an effort to avoid the need for injunctive relief briefing, that they would refrain from authorizing the removal of free-ranging cats pending a resolution on the Parties' cross-motions for summary judgment (assuming that such decision issued by May 15, 2026).  *Id.* ¶ 5.  On May 15, the Court issued a minute order informing the parties that it would finalize its opinion shortly.  May 15, 2026 Minute Order.  The Court further, "[t]o avoid any confusion or unnecessary motions practice," directed Defendants to "provide the Court and Plaintiffs with at least 48 hours' notice before commencing any affirmative removal activity pursuant to the 2023 Plan."  *Id.*

On May 20, the Court issued a nearly 90-page Opinion, finding Plaintiffs' claims lacked merit and granting summary judgment to Defendants.  Since that time, Defendants have been working to finally commence removal of the cats under the Plan, making arrangements with the Animal and Plant Health Inspection Service ("APHIS") to commence removal.  Declaration of

Myrna Palfrey Decl. ("Palfrey Decl.") ¶ 9, attached hereto as Exhibit 1.  As part of this effort, Defendants instructed Plaintiffs to remove all personal property from the Paseo Del Morro ("Paseo"), and began replacing Plaintiffs' supplies and materials (including feeding stations) with its own.  *Id.* ¶ 7 & Ex. A thereto.  However, the Park Service also authorized one of the Plaintiffs to make its own efforts to remove cats up until June 26, 2026.  *Id.* ¶ 8.  Defendants anticipate initiating their own removal activities under the Plan in July.  *Id.* ¶ 9.

On June 9, 2026, a new group of attorneys entered their appearance on behalf of Plaintiffs.  Dkt. Nos. 80, 82 & 83.  Plaintiffs contemporaneously filed a notice of appeal.  Dkt. 81.  On June 10, Plaintiffs filed their Motion to Stay Pending Appeal, asking the Court to "stay its decision in this case—and the 2023 Plan."  Dkt. 85-1 at 7.

## STANDARD OF REVIEW

As noted above, because Plaintiffs seek not to "simply suspend[] judicial alteration of the status quo," but rather to "direct[]an actor's conduct," *Nken*, 56 U.S. at 428–29, their Motion is properly viewed as seeking an injunction pending appeal, rather than a stay.

An "[i]njunction pending appeal is an extraordinary remedy." *Alcresta Therapeutics, Inc.*, 318 F. Supp. 3d at 324 (quoting *Memphis Publ'g Co. v. FBI*, 195 F.Supp.3d 1, 3 (D.D.C. 2012)).  "The standards for evaluating a motion for an injunction pending appeal are 'substantially the same as those for issuing a preliminary injunction.'" *Amgen Inc. v. Azar*, No. 17-cv-1006-RDM, 2018 WL 1990521, at *1 (D.D.C. Feb. 22, 2018) (quoting *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 n.11 (D.D.C. 2005)).  Accordingly, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). *See also MediNatura, Inc. v. Food & Drug Admin.*, No. 20-cv-2066-RDM, 2021 WL 1025835, at

5

*3 (D.D.C. Mar. 16, 2021).  "The first two 'prongs' typically are the 'most critical.'" *Republican Nat'l Comm. v. Pelosi*, No. 22-cv-659-TJK, 2022 WL 1604670, at *2 (D.D.C. May 20, 2022) (quoting *Citizens for Responsibility & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018)).

## ARGUMENT

In order to obtain the "extraordinary relief" of an injunction pending appeal, Plaintiffs bear a heavy burden to demonstrate that the relief is warranted.  *McCammon v. United States*, 588 F. Supp. 2d 43, 47 (D.D.C. 2008) (quoting *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988, 990 (D.D.C. 2006)).  Plaintiffs fail to meet this burden—not one of the four *Winter* factors weigh in favor of their requested remedy.  Plaintiffs' Motion should be denied.

### I.    Plaintiffs Cannot Show a Likelihood of Success on the Merits, Particularly Because the Court has Already Ruled against Them.

A plaintiff's likelihood of success on the merits is a key factor in addressing a request for injunctive relief.  *See Appalachian Voices v. Chu,* 725 F. Supp. 2d 101, 103 (D.D.C. 2010) (noting that "[i]t is particularly important for the movant to demonstrate a likelihood of success on the merits") (citing *Benten v. Kessler,* 505 U.S. 1084, 1085 (1992) (per curiam)).

Plaintiffs dedicate the majority of their brief (21 out of 31 pages) to their arguments that they have a likelihood of success on their claims.  *See* Dkt. 85-1 at 14-36.  The problem for Plaintiffs, of course, is that the Court has already found that their claims lack merit.  Under these circumstances, Plaintiffs face "a particularly heavy burden because the Court has already held that [Plaintiffs'] challenges fail on the merits." *Nat'l Ass'n for Fixed Annuities v. Perez*, 219 F. Supp. 3d 10, 13–14 (D.D.C. 2016).  The Court, therefore, "is not engaged in the process of predicting how it is *likely* to decide the case—it has already decided the case."  *Id.*  To prevail on this factor, then, Plaintiffs must at a minimum provide some "argument that causes this Court to

question the result it has already reached or to believe that the Court of Appeals is likely to reach a contrary conclusion." *Id. See also Amgen Inc.*, 2018 WL 1990521, at *1 (denying motion for injunction pending appeal because movant "has not raised any new considerations . . . that warrant reconsideration of the Court's earlier conclusions or that suggest that the Court of Appeals is likely to reverse").

Plaintiffs' Motion provides no arguments that might cause the Court to question its Opinion or suggest that the Court of Appeals is likely to reverse. To be sure, Plaintiffs argue vigorously that the Court's analysis was inadequate. But Plaintiffs simply reiterate the arguments (with some slight modifications) that the Court has already rejected, and provide no persuasive argument that could call the Court's Opinion into question.

As an initial matter, Plaintiffs argue that at issue are "substantial statutory and regulatory issues, any one of which the D.C. Circuit may view differently from this Court when it reviews each of those issues de novo." Dkt. 85-1 at 14. To the contrary. Plaintiffs' case is not focused on new or seldomly-litigated statutes or regulations: Plaintiffs primarily assert violations of NEPA and its former implementing regulations—both of which have regularly been addressed in this Court. The same can be said for Plaintiffs' arbitrary and capricious claim under the Administrative Procedure Act.

To be sure, Plaintiffs did assert one unusual claim, making the outlandish assertion that NPS did not have regulatory authority over lands that (as the Court explained at great length) were clearly within the lawfully designated boundaries of the Park. *See* Dkt. 78 at 41-54. Plaintiffs' arguments related to this claim (including its argument that NPS somehow partially ceded Congress' grant of management authority over a park unit by working in concert with local

7

government authorities) do not give rise to credible concern that the Court of Appeals will come to a different conclusion.

Similarly, none of the arguments Plaintiffs make with respect to their NEPA claims come close to demonstrating error by the Court. Plaintiffs first argue that NPS failed to evaluate a reasonable range of alternatives. Dkt. 85-1 at 16-18. Ultimately, their argument revolves around their contention that NPS refused to "truly consider" Trap-Neuter-Release ("TNR") as an option. *Id.* at 18. The Court comprehensively and convincingly rejected this (and related) arguments in its Opinion. Dkt. 78 at 65-70. Plaintiffs next argue that NPS did not "meaningfully or reasonably compare the effectiveness of its proposal to remove all community cats from the Paseo versus TNR." Dkt. 85-1 at 21. But the Court explained in detail why this contention "is incorrect." Dkt. 78 at 70; *see also id at* 70-73. Finally. Plaintiffs argue that NPS failed to address the "cultural importance of the Paseo cats and the reliance interests of Plaintiffs and community members who have cared for them for decades." Dkt. 85-1 at 29. Yet again, the Court has already considered and exhaustively rejected these arguments. Dkt. 78 at 78-88.

Ultimately, Plaintiffs fail to provide any reason for the Court to reconsider its Opinion, and Plaintiffs are decidedly unlikely to prevail in their appeal. Arguably, this failure is dispositive of Plaintiffs' Motion: "with the likelihood of success prong decided against it, [movant] cannot prevail under an approach that "'requires that the movant independently satisfy each of the four requirements for issuance of a preliminary injunction.'" *Amgen Inc. v. Azar,* Case No. 17-cv-1006-RDM, 2018 WL 1990521, at *3 (D.D.C. Feb. 22, 2018) *(quoting Nat'l Ass'n for Fixed Annuities*, 219 F. Supp at 13). However, at a minimum, Plaintiffs have failed to establish one of the two "critical factors," and this circumstance weighs heavily in favor of denying their Motion. *See Republican Nat'l Comm.*, 2022 WL 1604670, at *2.

II.    **Plaintiffs Cannot Demonstrate Irreparable Harm.**

Plaintiffs also do not show that an injunction is necessary to prevent irreparable harm to them.  To obtain their requested injunction, Plaintiffs must demonstrate that irreparable harm is "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 21-22.  The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017).  *See also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (noting that the D.C. Circuit "has set a high standard for irreparable injury").  Plaintiffs must provide actual evidence, not simply conclusory statements or unsupported allegations. *Cal. Ass'n of Private Postsecondary Schools v. DeVos*, 344 F.Supp.3d 158, 171 (D.D.C. 2018) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)) ("the movant must . . . substantiate the claim that irreparable injury is likely to occur.").  And, the complained of injury "must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co*, 758 F.2d at 674; *see also Elec. Priv. Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 44 (2014) (same).

Moreover, the alleged irreparable harm must be harm to the Plaintiffs themselves.  *See Winter,* 555 U.S. at 20 ("[A] plaintiff seeking a preliminary injunction must establish ... *that he* is likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)).  *See also Alcresta Therapeutics, Inc. v. Azar,* 318 F. Supp. 3d 321, 326 (D.D.C. 2018) ("injuries to third parties are not a basis to find irreparable harm"); *Heritage Found. v. U.S. Env't Prot. Agency*, No. 23-cv-748-JEB, 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023) (same); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012) (rejecting argument because "it shows irreparable harm not to [movant], but to third parties").

Here, Plaintiffs' arguments of irreparable harm fail for exactly that reason.  Plaintiffs completely rely on assertions of irreparable injury—not to Plaintiffs themselves—but to the

9

invasive cats and to members of the local community. *See* Dkt. 85-1 at 11-14. Indeed, they argue:

> the harm from implementation of NPS's Plan is not just irreparable for the cats facing removal from their home and likely death at the hands of NPS's contracted removal agent. It is an irreparable loss for the surrounding community members who care deeply for and derive pleasure from seeing and interacting with the cats, and will be distressed at both the cats' transfer from the Paseo and the knowledge that many will be killed due to the lack of shelter space in Puerto Rico.

Dkt. 85-1 at 12. They conclude their irreparable harm argument as follows:

> Implementation of NPS's 2023 Plan to remove all cats from the Paseo thus poses imminent, irreparable harm *to the community as well as the cats themselves*. That harm can be forestalled by a stay pending appeal, which would allow community cats to remain in their traditional home on the Paseo, to be cared for by Plaintiffs (at no expense to NPS) and enjoyed by local community members and visitors alike, pending the D.C. Circuit's review of NPS's 2023 Plan.

*Id.* at 13-14 (emphasis added).

Plaintiffs make nary a mention of any risk of irreparable harm to Plaintiffs themselves. Dkt. 85-1 at 11-14. But under *Winter* and the authorities cited above, they cannot rely on alleged irreparable harm to third parties—nor to the cats themselves. *See New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 150 n.5 (D.D.C. 2016) (explaining that "alleged harm to an animal, in and of itself, is not a sufficient injury to support a legal action in federal court") (citing *ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336–37 (D.C. Cir. 2003)). As a result, they fail to make any showing of cognizable irreparable harm—and, this failure is fatal to Plaintiffs' request for an injunction, "regardless of [their] showing on the other relevant factors." *E.B. v. U.S. Dep't of State*, 422 F. Supp. 3d 81, 88 (D.D.C. 2019) (citing *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 325 (D.D.C. 2018). *See also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (observing that "[a] movant's failure to show any irreparable harm is ... grounds for refusing to issue a preliminary

10

injunction, even if the other three factors entering the calculus merit such relief").  Their Motion should be denied on this failure alone.

### III.    The Balance of Harm and Public Interest Factors Weigh Against an Injunction.

As established above, Plaintiffs have failed to show that either of the two "critical factors" weigh in favor of Plaintiffs' requested injunction, and such failure mandates denial of Plaintiffs' Motion.  *See Amgen Inc.*, 2018 WL 1990521, at *1-2; *Alcresta Therapeutics, Inc.*, 318 F. Supp. 3d at 325.  However, the remaining factors, namely the balance-of-equities and public-interest factors, likewise weigh heavily against Plaintiffs' requested injunction.

These final two factors require courts to "balance the competing claims of injury and . . . consider the effect on each party with the granting or withholding of the requested relief," *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)), in addition to paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  As noted above, these factors merge when the government is one of the parties. *Nken*, 556 U.S. at 428–29.

In this case, the balancing of the harms analysis is straightforward.  As discussed above, Plaintiffs have demonstrated no irreparable harm to themselves, and otherwise, they show at most that some members of the community will miss seeing the cats at the Paseo and will be concerned about the cats' welfare.  Dkt. 85-1 at36-37.  However, with respect to the latter, the 2023 Plan will only remove cats from the Park—and local community members will still have the opportunity to observe and interact with the numerous free-ranging cats elsewhere in Old San Juan.  J.A. 1111.  Moreover, this concern is also mitigated by the fact that, following issuance of the Opinion, the Park Service provided permission to Plaintiff SAG to remove cats from the

11

Paseo, and SAG volunteers have been observed at the site with cages, presumably for removal efforts.  Palfrey Decl. ¶ 8.

In marked contrast to Plaintiffs' insubstantial showing, significant harm to Defendants and the public interest would result from the requested injunction.  The Park Service's Plan was designed to advance certain important objectives, namely to:

> address free-ranging cat populations within San Juan National Historic Site to improve the safety of its visitors and employees, protect park resources and reduce impacts to native wildlife species associated with free-ranging cats, alleviate nuisance issues, align the visitor experience with the purpose of the park, and bring the park into compliance with existing authorities for invasive species.

J.A. 864.  As the Court expressly found, "[t]hese are all reasonable objectives."  Dkt. 78 at 66. Further, these objectives are tied directly to the broader public interest.  Indeed, the Park Service is obligated to manage the Park, inter alia, to "provide for the enjoyment of the scenery, natural and historic objects, and wild life [sic] in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  54 U.S.C. § 100101(a).  The objectives the NPS seeks to promote with the Plan—including improving public safety; protecting park resources; reducing impacts to native wildlife; aligning the visitor experience with the purpose of the Park (e.g., preserving and interpreting historical fortifications)—are indisputably consistent with Congress' charge to the Park Service.

Unfortunately, as a direct result of this case, already NPS has been delayed by over two years in implementing the 2023 Plan and advancing these objectives.  *See supra* at pp. 3-5. However, the Court's Opinion having issued, NPS is now poised and ready to begin implementing the Plan and advancing its important objectives.  In the last month, it has already taken a variety of activities to prepare for the removal of the invasive cats, including:

- Completion of monthly daytime and nighttime surveys and monthly survey reporting

12

- Ongoing ecological planning efforts to develop and finalize a comprehensive vegetation and landscape management plan for the area, one of the purposes of which is to prevent recolonization following cat removal

- Procurement of supplies and equipment necessary to support plan implementation and post-removal monitoring activities following cat removal

- Development of monitoring protocols to guide implementation and evaluate project outcomes.

Palfrey Decl. ¶ 9.  Further, the Park Service has engaged with APHIS to arrange for initiation of the cat removal, which removal is currently anticipated to begin in July.  *Id.*

Plaintiffs' proposed injunction would impose further delay—likely at least a year—while Plaintiffs' appeal is litigated.  This circumstance will further delay the Park Service's ability to advance the important objectives underlying the 2023 Plan.  Further, as Superintendent Palfrey describes in her declaration, additional discrete harms are likely to result from this additional delay.  As she describes in detail, continued postponement of the Plan may result in harms such as the loss of staff necessary to implement the 2023 Plan; loss of funding to implement the 2023 Plan; the need to reschedule APHIS' involvement (complicated by APHIS' need to balance and schedule its workload from other projects); continued risk of ecological damage at the Site; continued impacts on visitor services; developments in the invasive cat colony that could make future implementation of the 2023 Plan more difficult; risk of public perception that the public may continue abandoning pet cats at the Site; and continued lack of alignment with guidance and authorities governing management of invasive species.  Palfrey Decl. ¶¶ 10-16.

Under these circumstances, the third and fourth factors weigh strongly against Plaintiffs' proposed injunction.  As such, Plaintiffs are not able to demonstrate that even one of the relevant

13

factors support its request—let alone all four.  Plaintiffs, therefore, do not come close to meeting the heavy burden they bear in showing entitlement to the extraordinary relief they seek, and their Motion should be denied.

IV.    **Plaintiffs Are Not Entitled to an "Administrative Stay."**

Finally, Plaintiffs ask, in the alternative, that the Court "grant an administrative stay to give Plaintiffs the opportunity to seek and obtain a stay from the Court of Appeals."  Dkt. 85-1 at 7.  However, Plaintiffs provide no detail as to what such an "administrative stay" would entail, nor any authority supporting their request.  Furthermore, a "stay" would not provide the relief that Plaintiffs are actually seeking: an order enjoining NPS from implementing the 2023 Plan.  *See Nken*, 556 U.S. at 428–29.  Plaintiffs cannot avoid the need to demonstrate entitlement to such an extraordinary remedy by labelling it "administrative," and this alternative request should be denied as well.

## CONCLUSION

Plaintiffs' Motion seeks to enjoin the Park Service from implementing the 2023 Plan.  Ironically, there is little distinction between the relief that Plaintiffs sought on the merits when they first initiated this case and the relief they now seek in their Motion.  But Plaintiffs have already lost before this Court on the merits, and it would be nonsensical to grant them the same relief they would have obtained had they prevailed.  None of the *Winters* factors weigh in favor of granting their Motion, and it should be denied.

Respectfully submitted this 18th day of June, 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division

 */s/ Romney S. Philpott*
ROMNEY S. PHILPOTT (Colo. # 35112)

14

Senior Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, 6th Floor—Suite 600
Denver, CO 80305
Phone: (303) 844-1810
Email: romney.philpott@usdoj.gov

ALEXA V. PENALOSA (AZ 038005)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
Phone: (202) 264-3569
Email: alexa.penalosa@usdoj.gov

*Attorneys for Defendants*

15