**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALLEY CAT ALLIES INCORPORATED, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES NATIONAL PARK SERVICE, *et al.*, <br><br> *Defendant.* | Civil Action No. 24-876 (RDM) |
| SAVE-A-GATO, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES NATIONAL PARK SERVICE, *et al.*, <br><br> *Defendant.* | Civil Action No. 25-1873 (RDM) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs Save-a-Gato, Inc. and Alley Cat Allies Incorporated's motion for a stay pending appeal, or in the alternative, for a brief administrative stay. Dkt. 85. The Court granted summary judgment in favor of the Defendants in a memorandum opinion issued on May 20, 2026, Dkt. 78. Plaintiffs filed a timely notice of appeal, Dkt. 81, and have now moved for a stay pending appeal or for an administrative stay. *See* Dkt. 85. Defendants oppose the motion. *See* Dkt. 86. For the reasons explained below, the Court will **DENY** Plaintiffs' motion.

**A.**

As a preliminary matter, the Court notes that Plaintiffs request that the Court "stay its recent decision in this case." Dkt. 85 at 1; *see also* Dkt. 85-1 at 7. But that is not quite right. In its "recent decision" and order, the Court denied Plaintiffs' motion for summary judgment and granted the Defendants' cross-motion for summary judgment. Dkts. 78 & 79. As a result, there is nothing in the Court's order for it to now stay—or, at least, nothing that would provide Plaintiffs with the relief that they seek. Indeed, if the Court were to stay its order, the dispute between the parties would be left unresolved, and, presumably, the National Park Service ("NPS") would be free to implement the disputed agency action. What Plaintiffs actually seek is a Section 705 stay of the challenged agency action, *see* 5 U.S.C. § 705, or an affirmative injunction pending appeal, *see* Fed. R. Civ. P. 62(d).

The standards for issuance of a Section 705 stay or an injunction pending appeal are the same as the standard for issuing a preliminary injunction: "[E]ach is governed by the four-part preliminary injunction test applied in this Circuit." *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012); *see also MediNatura, Inc. v. FDA*, 2021 WL 1025835, at *4 (D.D.C. Mar. 16, 2021). A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Before the Supreme Court's decision in *Winter*, the D.C. Circuit applied a "sliding-scale" approach under which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Since *Winter*, the D.C. Circuit has suggested on several occasions "that a likelihood of success is an independent, free-standing requirement for a preliminary injunction," *id.* at 393 (quoting *Davis v.*

*Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009)), and has noted that it is "questionable" whether "the sliding scale approach remains good law" after *Winter*, *Clevinger v. Advoc. Holdings*, 134 F.4th 1230, 1235, 1236 n.2 (D.C. Cir. 2025).  But it has yet to decide the issue.  *Id.* at 1235–36.  Under either approach, however, the Court concludes that Plaintiffs are not entitled to a Section 705 stay or an injunction pending appeal.

**B.**

If *Winter* is read to require that the movant demonstrate that it is likely to prevail on the merits, no further analysis is necessary.  The Court "has not only already concluded that [Plaintiffs] [are] unlikely to prevail on the merits, but has fully considered the merits and ruled against [Plaintiffs]."  Order at 3, *Amneal Pharms. LLC v. FDA*, No. 17-cv-180 (D.D.C. Jan. 26, 2018), ECF No. 78.  "The Court, accordingly, is not engaged in the process of predicting how it is *likely* to decide the case—it has already decided the case."  *Nat'l Ass'n for Fixed Annuities v. Perez*, 219 F. Supp 3d 10, 13–14 (D.D.C. 2016) (emphasis in original).

Plaintiffs have not raised any new considerations that might (if properly raised) warrant reconsideration of the Court's earlier conclusions or that might suggest that the Court of Appeals is likely to reverse.  The Court's memorandum opinion addresses Plaintiffs' contentions that: (1) the NPS made an "erroneous assertion that it was legally barred from continuing TNR," Dkt. 85-1 at 18; *see* Dkt. 78 at 60–64; (2) the NPS "refused to identify and consider other TNR-based alternatives" or "an enhanced TNR program" and thus failed to consider a reasonable range of alternatives, Dkt. 85-1 at 18; *see* Dkt. 78 at 65–70; (3) the "NPS's insistence that it could not select Alternative 1 . . . was based on its mistaken and unsupported designation of the Paseo community cats as an invasive species," in part because it lacked "site-specific" data, Dkt. 85-1 at 19; *see* Dkt. 78 at 55–60; (4) the NPS "made no serious effort to compare and contrast the

3

environmental effects of maintaining or improving the existing TNR program against those of its preferred removal plan," in part because it lacked a "comprehensive natural resource inventory," Dkt. 85-1 at 22; *see* Dkt. 78 at 70–74; (5) the NPS's comparative analysis "ignored the success of the Plaintiffs' [TNR] program" while neglecting the "significant issues with its" chosen alternative, including the vacuum effect, Dkt. 85-1 at 22, 26–27; *see* Dkt. 78 at 74–78; (6) the "NPS failed to respond to comments on the cultural significance of the cats in violation of the APA" and "ignored the substantial reliance interests born from decades of administering the TNR program," Dkt. 85-1 at 29; *see* Dkt. 78 at 78–88; and (7) "the NPS Site does not include the Paseo regardless of whether it is on federal land" and "cannot be within the Site" and thus the "NPS was required to consult with Puerto Rican authorities before promulgating and implementing its . . . Plan[]" pursuant to 16 U.S.C. § 1246(h)(1), Dkt. 85-1 at 35; *see* Dkt. 78 at 41–54.

The Court, in short, considered and rejected each of Plaintiffs' far-ranging arguments. Nor can Plaintiffs now raise arguments that they failed (meaningfully) to raise before the Court entered judgment, including their new contentions that the "NPS's own methodology for tallying the cat population was deeply flawed," Dkt. 85-1 at 24, and that the "NPS's refusal to consult with Puerto Rican government authorities or the PRTC . . . is . . . in violation of the APA obligation to explain any change in the agency's view of its authority and obligations," *id.* at 34. Accordingly, with the likelihood of success prong decided against it, Plaintiffs cannot prevail under an approach that "requires that the movant independently satisfy each of the four requirements for issuance of a preliminary injunction." *Nat'l Ass'n for Fixed Annuities*, 219 F. Supp at 13. This alone is dispositive, and the Court need not proceed to consider the remaining factors. *See Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,

4

639 F.3d 1078, 1088 (D.C. Cir. 2011) ("When a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors."); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) ("And because the plaintiffs have shown no likelihood of success on the merits, we choose not to 'proceed to review the other three preliminary injunction factors.'" (quoting *Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009)).

## C.

Even if the sliding-scale approach retains vitality, however, Plaintiffs' motion still fails. To start, the sliding scale does not discard the likelihood of success on the merits entirely, and where the Court has already concluded that Plaintiffs are not only unlikely to prevail but have, in fact, already lost the case, they face a very high hurdle in seeking a Section 705 stay or an affirmative injunction pending appeal. *See Nat'l Ass'n for Fixed Annuities*, 219 F. Supp. 3d at 13 (noting that when "the Court has already held that [a movant's] challenges fail on the merits," the movant "faces a particularly heavy burden"). Nor is this a case in which this Court has resolved a novel question, which has split the circuits or that the D.C. Circuit has flagged as difficult or unsettled.

As noted above, moreover, Plaintiffs do not seek a stay of this Court's order but, rather, they ask the Court to grant them the same affirmative relief that they sought in the case—or at least to do so while the case remains pending on appeal—even though the Court has held that they are not entitled to that relief. Under the sliding-scale approach, "a very strong showing of irreparable harm" and an absence of "substantial harm to the non-movant" might permit "a correspondingly lower" showing of "likelihood of success." *Davis*, 571 F.3d at 1292. But a "lower" showing of "likelihood of success" does not mean that a plaintiff who has already lost

on the merits and who has failed to identify any conflicting precedent, circuit split, or prior expression of judicial doubt on the questions presented—that is, a plaintiff who fails entirely under the first prong of the four-factor test—can obtain an affirmative injunction pending appeal.

Although this should end the matter, the Court is prepared to assume—at least for the sake of argument—that a case might arise in which the irreparable harm is so overwhelming and the harm to the opposing party is so insubstantial that the sliding-scale approach (if still valid) might permit the issuance of an injunction pending appeal, even where the district court has already rejected the plaintiff's claims on the merits and the prospect of success on appeal is remote. This, however, is not even close to such a case.

Plaintiffs, of course, bear the burden on demonstrating that, absent interim relief, they will suffer an irreparable injury. Irreparable injury is the "*sine qua non*" for obtaining preliminary relief. *Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 165 (D.D.C. 2018). Here, Plaintiffs invoke the "imminent, irreparable harm *to the community* as well as *the cats* themselves." Dkt. 85-1 at 13 (emphases added); *see also id.* at 12 (noting that "the harm from implementation of NPS's Plan is not just irreparable for the cats, . . . [but] [i]t is [also] an irreparable loss for the surrounding community members"). But injuries to others will not suffice. *See Heritage Found. v. U.S. Env't Prot. Agency*, No. 23-cv-748, 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023) ("injuries to third parties are not a basis to find irreparable harm." (citation modified)); *cf. New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 150 n.5 (D.D.C. 2016) ("[A]lleged harm to an animal, in and of itself, is not a sufficient injury to support a legal action in federal court." (citing *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336–37 (D.C. Cir. 2003)). Plaintiffs must, of course, stake their claims of irreparable injury to imminent

6

"certain and great, actual and not theoretical" harm to themselves or to their members.  *League of Women Voters of United States v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (citation modified).  They have failed meaningfully to develop *any* arguments of this kind in their motion for interim relief.[1]  It is not the Court's role, moreover, to consider arguments that Plaintiffs do not themselves raise.

At most, the Court might infer that Plaintiffs include some of their members among the "community" that "care[s] deeply for and derive[s] pleasure from seeing and interacting with the cats."  Dkt. 85-1 at 12.  But the Court cannot conclude that, without temporary relief, the removal efforts that the NPS and the Animal and Plant Health Inspection Service of the Department of Agriculture ("APHIS") plan to "start[]" sometime in July, Dkt. 86-1 at 3, 5 (Palfrey Decl. ¶¶ 9, 12), are likely to cause irreparable harm to some of Plaintiffs' members' interests in observing or enjoying free-ranging cats.  This is particularly so, since one of the central tenets of Plaintiffs' arguments is that "other cats can readily access the Paseo, and no doubt will increasingly do so as fewer of the cats that have historically occupied that area remain," Dkt. 85-1 at 12 (footnote omitted), and since a large population of free-ranging cats will remain a short distance away in Old San Juan, *see* J.A. 889, 895.  *Cf. Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 219–20 (D.D.C. 2015) ("there is no enforceable right to observe a particular number of animals" (citation modified)).  And, finally, even if the Court were to assume (despite Plaintiffs' arguments to the contrary) that Plaintiffs' members might forever lose

---

[1] Although the Court concluded that the 2023 Plan's effective termination of Save-a-Gato's TNR program established a sufficiently concrete organizational injury to permit Plaintiffs to challenge the 2023 Plan, Dkt. 78 at 38–41, Plaintiffs do not even mention their organizational interests in their preliminary injunction motion, much less supply evidence to meet their burden of demonstrating that the Plan's implementation during the pendency of their appeal rises to the level of an irreparable injury justifying interim relief.

the opportunity to view free-ranging cats on the Paseo (as opposed to elsewhere in the environs), that injury would not be sufficiently grave to overcome Plaintiffs' failure to show any likelihood of success on the merits.

Ultimately, there is little distinction between the relief that Plaintiffs seek on the merits— an order vacating and setting aside the 2023 Plan—and the relief that it seeks in this motion—an order precluding the NPS from implementing its 2023 Plan while Plaintiffs' appeal is pending. And although "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction," *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (citation modified), likelihood of success on the merits and irreparable harm "are of particular importance." *Corp. for Pub. Broad. v. Trump*, 786 F. Supp. 3d 142, 149 (D.D.C. 2025). Having concluded that Plaintiffs' arguments on the merits fail and that they have not demonstrated that they face an imminent and "great" harm, the Court will deny Plaintiffs' motion for a Section 705 stay or injunction pending appeal.

**D.**

For similar reasons, Plaintiffs have failed to show that they are entitled to an administrative stay while the D.C. Circuit decides whether to enjoin the agency action pending appeal.

The Court recognizes that it may be appropriate, at least at times, for a district court to grant a short administrative stay—or even a brief affirmative injunction—to avoid mooting a case while the court of appeals decides whether to grant its own administrative stay and/or injunction pending appeal. But where, as here, the movant has failed to demonstrate a likelihood of success on the merits, or even to show that the case presents a close question for appeal, and where there is no reason to believe that the case will be rendered moot before the court of

8

appeals can decide whether to grant interim relief, that concern is not present.  Because the NPS

has indicated that it does not intend to "start[]" removing the free-ranging cats from the Paseo

until July, Plaintiffs will have time to seek such a stay from the D.C. Circuit before the NPS

takes any further action and before any risk of mootness emerges.  *See* Dkt. 86-1 at 3 (Palfrey

Decl. ¶ 9).

The Court will, accordingly, deny Plaintiffs' request for an administrative stay.

## CONCLUSION

For all these reasons and for those set forth in the Court's earlier memorandum opinion,

Dkt. 78, Plaintiffs' motion for a stay pending appeal, or an administrative stay in the alternative,

Dkt. 85, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 19, 2026.

9